1

2

3                   **UNITED STATES DISTRICT COURT**

4                        **DISTRICT OF OREGON**

5                        **PORTLAND DIVISION**

6

7  THELMA ANN FAILEY,                    )
                                         )
8              Plaintiff,                )      No. 03:11-cv-01088-HU
                                         )
9  vs.                                   )
                                         )
10 PATRICK R. DONAHOE, Postmaster        )  **MEMORANDUM OPINION AND ORDER**
   General; SHARON BLACKBURN,            )  **ON MOTION TO DISMISS, OR IN**
11 Facilities Manager; and UNITED        )  **THE ALTERNATIVE FOR SUMMARY**
   STATES POSTAL SERVICE;                )           **JUDGMENT**
12                                       )
               Defendants.               )
13
                    _____
14

15

16 Michael Fuller
   Carl Cramer, Certified Law Student
17 Olsen Daines, PC
   9415 SE Stark St., Suite 207
18 Portland, OR 97216

19         Attorneys for Plaintiff

20

21 S. Amanda Marshall
   United States Attorney, District of Oregon
22 Janice E. Hebert
   Assistant United States Attorney
23 Chris Morgan, Certified Law Student
   1000 S.W. Third Avenue, Suite 600
24 Portland, OR 97204

25         Attorneys for Defendants

26

27

28

1 - MEMORANDUM OPINION AND ORDER

HUBEL, Magistrate Judge:

The plaintiff Thelma Ann Failey brings this discrimination action against her former employer United States Postal Service ("USPS"); Patrick R. Donahoe, who is United States Postmaster General; and Sharon Blackburn, who was the Facilities Manager at the USPS's Mount Hood Detached Distribution Center ("DDC") in Portland, Oregon, during a portion of the time Failey worked at the DCC. Failey claims she was "forced into 'early retirement' . . . because of the color of her skin, her age, and her disability[,] . . . and because she had the courage to complain of prior discrimination." Dkt. #18, Second Amended Complaint, ¶¶ 1, 16. The matter currently before the court is the defendants' "Motion to Dismiss and in the Alternative for Summary Judgment." Dkt. #31; *see* Dkt. ## 32, 33, 37, & 38. Failey has opposed the motion, Dkt. ## 34 & 35, and the court heard oral argument on the motion on February 7, 2013. The motion is fully briefed and ripe for decision.

## I.  BACKGROUND FACTS

Failey worked at the DDC as a Mail Processing Clerk for nearly ten years. She had some health problems during that time that are only documented sparsely in the record before the court. She suffered a back injury on August 30, 2000, which resulted in some type of temporary modified duty restrictions through January 23, 2001.[1] In June 2003, Jane O. Drummond, M.D., who was treating Failey for "chronic cervical radiculopathy," indicated Failey's

---

[1] *See* Dkt. #33-1, ECF pp. 49-50 - Kaiser Permanente Workers' Compensation Forms dated 1/2/01 and 1/23/01.

2 - MEMORANDUM OPINION AND ORDER

work on "the FSM 100 sorting machine" was exacerbating her symptoms, and Failey should be restricted to working on the machine for "four hours with two hour breaks in between."[2]

Failey apparently suffered "neck and rotator cuff injuries in 2004,"[3] which resulted in some type of work restrictions. Doctor's notes from July 2008, indicate Failey was assigned permanent modified duty restrictions as of May 29, 2007, that included no repetitive lifting over 15 to 20 pounds, no work at or above right shoulder level, and avoid work on "the AFSM 100 mail processing machine," although she was authorized to "push and pull up to 15-20# of force (not including cart or equipment weight) on wheels, etc."[4]

Failey was authorized to be off work from February 28, 2008, through March 27, 2008, for surgery to remove a mass in her lower left quadrant.[5] She was seen in the ER on July 13, 2008, for an apparent neck injury, and was authorized to be off work through July 15, 2008. Upon her return, she was to be restricted to "no lifting more than 5 lbs., pushing, pulling, work at shoulder level or above [and] work requiring repeated or quick head movements for up to 2 weeks."[6] Failey saw a doctor at Kaiser Permanente on July 18, 2008, to assert a new claim for workers' compensation

---

[2]*Id.*, ECF p. 51, Letter from Dr. Drummond dated June 12, 2003.

[3]Dkt. #32, ECF p. 7.

[4]Dkt. #33-1, ECF p. 55, Kaiser Permanente Workers' Compensation Form dated 7/18/08; Dkt. #18, Second Amended Complaint, ¶ 17.

[5]*Id.*, ECF p. 52, Clinician's Report of Disability dated 1/28/2008.

[6]*Id.*, ECF pp. 52-54

3 - MEMORANDUM OPINION AND ORDER

benefits due to "sprain or strain of cervical spine."[7]   The workers' compensation form indicates a greater than 50% chance that Failey's injury was the "[r]esult of industrial exposure."[8]   She was released for modified work consistent with her existing restrictions through August 8, 2008.[9]   At a doctor's visit on August 12, 2008, her work restrictions were noted to be permanent.[10]

In addition to these injuries, Failey is diabetic, requiring the use of insulin.[11]

At the time Blackburn came to the DDC, Failey was working on "Tour 2," a shift that went from 9:00 a.m. to 5:30 p.m.   She had been working that shift as "a limited duty employee . . . for about 7 years."[12]   Blackburn's interactions with Failey took place between January and September 2008.[13]   Blackburn does not hire and fire employees; her job is "to run the postal service in an efficient manner," which includes changing employees' shifts, and "[p]utting people where the need is, where the volume is."[14]   Blackburn observed that "a lot of employees on tour 2 day shift" - the shift when Failey was working - "were going home every day because there

---

[7] *Id.*, ECF p. 55.

[8] *Id.*   The form further indicated Failey had had a previous workers' compensation claim dated April 1, 2004.

[9] *Id.*

[10] *Id.*, ECF p. 57.

[11] Dkt. #32, ECF p. 7.

[12] Dkt. #38-1, Failey's "Pre-Complaint," ECF pp. 1-2.

[13] Dkt. #35-1, Blackburn Depo., ECF p. 10.

[14] *Id.*

4 - MEMORANDUM OPINION AND ORDER

1  was no mail volume, and yet on swing shift around 8:00 [p.m.]," she
2  was having to bring people in before their shift and pay a lot of
3  overtime because of the higher mail volume.[15]  As a result,
4  Blackburn made the business decision to "excess, meaning get rid of
5  jobs," the Tour 2 flat sorter crew, moving those employees to
6  different shifts.[16]  On July 25, 2008, Blackburn told Failey that
7  she was going to be moved to Tour 3.[17]  Soon thereafter, Blackburn
8  gave letters to all of the employees whose shifts were going to be
9  changed, and also had a "stand-up talk" with them regarding the
10 upcoming change.[18]  Failey received a letter dated August 8, 2008,
11 advising her "that as a junior employee," she was "excess to the
12 needs of the section," and her position was "no longer a necessary
13 position based on the needs of the service due to the decrease in
14 mail volume."  The letter further stated that as of September 13,
15 2008, Failey's job schedule would be "1600 to 0030 with Schedule
16 Days off on Sunday and Monday."[19]

17     In the Pre-Complaint Failey submitted to the USPS Equal
18 Employment Opportunity office (the "EEO"), she indicated she and
19 Blackburn had had discussions previously about moving Failey to
20 Tour 3, and Failey had told Blackburn that due to her health

---

22     [15]*Id.*, ECF p. 11.

23     [16]*Id.*, ECF p. 10.

24     [17]Dkt. #38-1, Failey's "Pre-Complaint," ECF p. 1.

25     [18]Dkt. #35-1, Blackburn Depo., ECF p. 10; *see* Dkt. #33-1, ECF
26 p 72.

27     [19]Dkt. #33-1, ECF p 72; *see id.*, p. 73 (indicating "As
   unassigned and because of no mail available in the morning shift
28 and half of the clerks on shift 2 are being changed either their
   job is being abolished or being reposted.").

5 - MEMORANDUM OPINION AND ORDER

problems - specifically, the scheduling of her insulin injections - she would not be "able to cope physically on tour 3."[20]  Failey asked for an accommodation to allow her to stay on Tour 2.[21]  On August 13, 2008, the USPS referred Failey to the District Reasonable Accommodation Committee (the "DRAC").  The six-person DRAC met on August 21, 2008, to discuss Failey's request for accommodation.  As part of their discussion, the DRAC talked with Failey by telephone.  The DRAC recognized Failey's current medical restrictions, and found that none of her current restrictions related to the hours of work.  The DRAC further found Failey's diabetes did not affect any of her major life activities.  Failey's request for accommodation was denied.[22]

Blackburn offered Failey a work schedule from 12:00 p.m. to 8:30 p.m., with the option of taking leave from 5:30 p.m. to 8:30 p.m. if Failey felt unable to complete the entire shift.[23]  Blackburn communicated this offer twice to an EEO representative, but Failey turned down the offer both times.[24]

Failey declined to accept the change from Tour 2 to Tour 3, instead taking disability retirement effective as of December 15,

---

[20]Dkt. #38-1, Failey's "Pre-Complaint," ECF p. 1.

[21]*Id.*; Dkt. #33-1, DRAC Information Evaluation Form, ECF p. 75.

[22]Dkt. #33-1, ECF pp. 73-87.

[23]*Id.*, ECF p. 38, EEO Investigative Affidavit of Sharon F. Blackburn.

[24]*Id.*

6 - MEMORANDUM OPINION AND ORDER

2008.  Her last day in pay status with the USPS was September 28, 2008.[25]

On October 22, 2008, Failey filed an "EEO Complaint of Discrimination in the Postal Service."[26] She claimed discrimination on the basis of Race ("African American"), Age ("60 yrs"), and Disability ("neck, back, shoulder").[27] Failey described the nature of her discrimination claim as follows:

> Ms. Failey was involved in an on the job injury in August of 2000.  As a result, she suffered back injuries and therefore was put on light duty.  She was involved in another on the job injury in 2003 in which she sustained injuries to her neck.  Finally, she suffered a shoulder injury from an on the job accident in 2004.  All of the accidents required Ms. Failey to remain on light duty.  During her employment she made attempts to bid for certain jobs, specifically of a supervisor nature.  Although she passed all the required tests, she was told that she should not bid for those jobs because of her light duty status, although she otherwise qualified.

> Once Ms. Failey was finally given an opportunity to enter the supervisor training program, she was treated differently than the others in the program.  She was micro-managed and over-evaluated during the program.  She was criticized for not performing certain actions, in which others in the program were not criticized for [sic].  After the program was over Ms. Failey alleged age, race and disability discrimination.

> The discrimination that occurred was not a single event, but was continuous action.  Each time Ms. Failey was denied a chance to apply for a supervisor position she was being discriminated against because of her race, age

---

[25]*Id.*, ECF p. 166, Notification of Personnel Action; *see id.*, ECF p. 145, Final Agency Decision.

[26]*Id.*, ECF pp. 189-90.

[27]*Id.*, ECF p. 189.

7 - MEMORANDUM OPINION AND ORDER

and disability.  She was treated differently
because of her race.  She was treated differ-
ently because she is 60 years old.  On a
number of occasions she was encouraged to seek
early retirement by Sharon Blackburn.  Fur-
ther, she was discriminated against because of
her physical disabilities.  One of the reasons
she was denied in applying for a supervisor
position was because she was on a light duty
as a result of her disabilities.

In August of 2008 Ms. Failey requested accom-
modations for her disability, the request
being heard by the Accommodation Committee.
Ms. Failey was interviewed by phone and ulti-
mately her accommodation was denied.  She did
not appeal the decision.

Further, in July of 2008 she was notified that
her day shift position was being excessed and
that she would be required to work a new shift
from 1600 to 0030.  The letter encouraged
employees to bid for other vacancies on other
shifts.  Again, because of Ms. Failey's light
duty status, she was not able to bid for other
jobs.  Others who were moved shifts were on
machines, not on light duty as was Ms. Failey.
No other light duty employees were moved in
the process.  Her physician's [sic] have
stated that due to her injuries and physical
disabilities, she is not able to work any
other shift but the day shift.[28]

The National EEO Investigative Services Office of the USPS
grouped Failey's narrative into five specific issues, as follows:

[Failey] alleges discrimination based on Race
(African American), Age (60 years old), and
Physical Disability (Neck, Back, and Shoulder)
when:

1) Since in or around 2003, [she] was not
permitted to bid on certain jobs, specifically
of a supervisor nature;
2) While in the supervisor training program,
[she] was treated differently than others in
that she was over-evaluated, micro-managed,
and criticized;
3) On a number of occasions, [she] was encour-
aged to seek early retirement;

---

[28]*Id.*, ECF p. 190.

8 - MEMORANDUM OPINION AND ORDER

> 4) In July 2008, [she] was notified that her light duty assignment was changed from Tour 2 to Tour 3 effective September 13, 2008; and 5) On August 22, 2008, [her] accommodation request to the District Reasonable Accommodation Committee (DRAC) to remain on Tour 2 was denied.[29]

The EEO only accepted issues (4) and (5) for investigation. Issues (1), (2), and (3) were dismissed "in accordance with 29 C.F.R. 1614.107(a)(2)," because Failey had failed to bring those issues to the attention of an EEO counselor, and those issues did not "add to []or clarify the original complaint and could have reasonably been expected to grow out of the original complaint."[30]

Failey acknowledged that issues (1) and (2) were dismissed rightfully, but she argued the third issue was "related to issues 4 and 5, which were accepted."[31]  Failey argued one of the times "she was encouraged to seek early retirement" was after she expressed concerns regarding the change in shift from Tour 2 to Tour 3, and therefore, issue (3) was directly related to issues (4) and (5).[32]  In response, the EEO maintained its position, stating, "We do not find that this issue states a distinct and actionable claim; however, it may be cited as background information in support of the issues accepted for investigation."[33]

---

[29]*Id.*, ECF p. 196, "Partial Acceptance/Partial Dismissal of Formal EEO Complaint."

[30]*Id.*, ECF p. 197.

[31]*Id.*, ECF p. 195, letter dated November 21, 2008, from Failey's attorney to the EEO Manager.

[32]*Id.*

[33]*Id.*, ECF p. 194.

9 - MEMORANDUM OPINION AND ORDER

The EEO issued its final decision on Failey's complaint on June 23, 2009.[34]  The EEO noted that to establish a *prima facie* case of race and age discrimination, Failey had to show that she "(1) belongs to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group."[35]  The Agency found Failey had established the first prong, in that she is African American and was born in 1948, and she arguably had established the second prong.[36]  With regard to the third prong, however, the Agency found Failey "failed to identify any employee, not in her protected groups, who was treated more favorably than her, and [she] acknowledged that she was the only light or limited duty employee on Tour 2."[37]  The Agency noted "Blackburn testified that she excessed a whole crew of AFSM Tour 2 employees to Tour 3 . . . consist[ing] of six Mail Processing Clerks and five Mail handlers."[38]  The Agency further found that with regard to her age discrimination claim, Failey failed to show anything beyond her own speculation that the decision to excess her to Tour 3 was motivated by her age.[39]  The Agency concluded Failey

---

[34] *Id.*, ECF pp. 136-56, Final Agency Decision.

[35] *Id.*, ECF p. 145 (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)).

[36] *Id.*

[37] *Id.*, ECF p. 146.

[38] *Id.*

[39] *Id.*, ECF pp. 146-47 (citing, *inter alia*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105 (2000)).

10 - MEMORANDUM OPINION AND ORDER

had "failed to establish a *prima facie* case of discrimination based upon race or age."[40]

Turning to Failey's claim of disability discrimination, the EEO found Failey failed to establish a *prima facie* case because she had not shown she was an "otherwise qualified individual with a disability" for purposes of the Rehabilitation Act.[41]   Even if Failey had shown she was an "otherwise qualified individual with a disability," she had not shown the USPS "failed to make a needed reasonable accommodation, resulting in adverse treatment of her."[42] And even if Failey had shown the USPS failed to accommodate her disability, she had failed to show "she was treated differently than individuals not within her protected group."[43]

The EEO further found that even if Failey had established a *prima facie* case of discrimination based on race, age or disability, the USPS management had "articulated a legitimate, non-discriminatory explanation for their actions."[44]   Specifically, the EEO noted Blackburn had excessed an entire crew of AFSM employees from Tour 2 to Tour 3, and each of those employees had been dealt

---

[40]*Id.*, ECF p. 147.

[41]*Id.*, ECF p. 147 (noting "EEOC Regulation 29 C.F.R. 1630.2(g) defines a person with a disability as one who: (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of having such an impairment; or (iii) is regarded as having such an impairment."); *see id.*, ECF pp. 147-51.

[42]*Id.*

[43]*Id.*, ECF p. 150; *see id.*, ECF pp. 147-51.

[44]*Id.*, ECF p. 151; *see id.*, ECF pp. 137-38 (discussing the burden-shifting framework of *McConnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and its progeny).

with in a similar manner; i.e., by delivery of a letter explaining the situation, and with a "stand-up" talk during which Blackburn explained her decision.  In addition, Blackburn "explained that according to the [collective bargaining agreement], full time employees, excess to the needs of a section, starting with that employee who [was] junior in the same craft or occupational group and in the same level assigned in that section, [would] be reassigned outside the section but within the same craft or occupation group."[45]  According to Blackburn, Failey was "the most junior of the six clerks that were excessed," and "had a bid position in the AFSM unit."[46]  Blackburn stated Failey "was still in the same occupational group and in the same level as the other AFSM Mail Processing Clerks that were being excessed, despite Failey's limited duty.[47]  The Agency further found Failey had not met her burden to show that management's stated reason was "not only a pretext, but [a] pretext for discrimination.[48]

The Agency concluded that Failey had failed to establish discrimination as alleged, and her complaint was "closed with a finding of no discrimination."[49]

On July 18, 2009, Failey appealed the Agency's action to the U.S. Equal Employment Opportunity Commission ("EEOC").[50]  Failey

---

[45]*Id.*, ECF p. 152.

[46]*Id.*

[47]*Id.*

[48]*Id.*, ECF pp. 153-54.

[49]*Id.*, ECF p. 154.

[50]*See id.*, ECF pp. 104-11.

12 - MEMORANDUM OPINION AND ORDER

contended she was "an individual with a disability under the Rehabilitation Act"; she had "been unable to control her diabetes for several years"; "all of her medical documentation was not submitted to the DRAC"; "the Facility Manager told her to retire because of her medical limitations"; and "the Facility Manager made her work on the AFSM machine 100, which violated her medical restrictions."[51]   On June 10, 2011, the EEOC issued its decision affirming the Agency's final decision.[52]

Failey filed the instant case on September 8, 2011.[53]  After proceeding through the initial review process and receiving court-appointed counsel, Failey filed her Second Amended Complaint on January 23, 2012.[54]  It is her Second Amended Complaint that is the subject of the defendants' current motion.

In her Second Amended Complaint, Failey asserts the following claims for relief:

**First Claim for Relief** (Unlawful Employment Practices) (42 U.S.C. § 2000e):

    **Count I** (Discrimination Based on Skin Color) (42 U.S.C. § 2000e-2(a)) - for allegedly requiring Failey "to work on the flat sorter machine and giving her excessive work loads"; "failing to compensate her while she was in physical therapy"; "requiring her to work weekends"; "limiting her work hours

---

[51]*Id.*, ECF p. 106.

[52]*Id.*, ECF p. 108; *see id.*, ECF pp. 104-08.

[53]Dkt. #2, Complaint.

[54]Dkt. #18.

13 - MEMORANDUM OPINION AND ORDER

arbitrarily"; and "creat[ing] a hostile work environment that ultimately led to her forced 'early retirement.'"[55]

**Count II** (Discriminatory Retaliation) (42 U.S.C. § 2000e-3(a)) - for allegedly "creating a hostile work environment, because [Failey] opposed Defendants' unlawful employment practices through a prior lawsuit and various grievances"; and, from 2004 until 2008, "requiring her to work weekends and limiting her work hours arbitrarily, because she opposed Defendants' unlawful employment practices through a prior lawsuit and various grievances."[56]

**Second Claim for Relief** (Unlawful Age Discrimination) (29 U.S.C. § 623):

**Count I** (Discrimination Based on Age) (29 U.S.C. § 623(a)) - for allegedly "attempting to force [Failey] into quitting by giving her excessive work loads"; and "limit[ing] her work hours arbitrarily," from 2004 until 2008.[57]

**Count II** (Discriminatory Retaliation) (29 U.S.C. § 623(d)) - for allegedly "creating a hostile work environment, because [Failey] opposed Defendants' age discrimination through a prior lawsuit and various grievances"; and "requiring her to work weekends and limiting her work hours arbitrarily, because she opposed Defendants' age discrimination through a prior lawsuit and various grievances."[58]

---

[55] *Id.*, ¶¶ 43-47.

[56] *Id.*, ¶¶ 49 & 50.

[57] *Id.*, ¶¶ 53 & 54.

[58] *Id.*, ¶¶ 56 & 57.

14 - MEMORANDUM OPINION AND ORDER

**Third Claim for Relief** (Unlawful Discrimination Based on Disability) (42 U.S.C. § 12112) - for allegedly attempting to force Failey to quit her job, "telling her 'why don't you just retire[,]' and by giving her excessive work loads"; and "admitting to her that her transfer request would be unsuccessful because of her disability and misleading her about the elimination of her current position."[59]

**Fourth Claim for Relief** (Oregon Unlawful Employment Discrimination Law) (ORS 659A.030) - relying on her previous allegations in the pleading).[60]

**Fifth Claim for Relief** (Oregon Unlawful Employment Discrimination Against Injured Workers Law) (ORS 659A.040) - relying on her previous allegations in the pleading.[61]

**Sixth Claim for Relief** (Oregon Unlawful Employment Discrimination Against Persons with Disabilities Law) (ORS 659A.112) - relying on her previous allegations in the pleading.[62]

## II.   *THE DEFENDANTS' MOTION TO DISMISS*

### A.   *Standards*

Chief Judge Aiken of this court set forth the standard for the court's consideration of a motion to dismiss in *Gambee v. Cornelius*, No. 10-CV-6265-AA, 2011 WL 1311782 (D. Or. Apr. 1, 2011) (Aiken, C.J.).   Judge Aiken observed:

---

[59] *Id.*, ¶¶ 60 & 61.

[60] *Id.*, ¶ 64.

[61] *Id.*, ¶ 66.

[62] *Id.*, ¶ 68.

15 - MEMORANDUM OPINION AND ORDER

1            Under Fed. R. Civ. P. 12(b)(6), a com-
2   plaint is construed in favor of the plaintiff,
    and its factual allegations are taken as true.
3   *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d
    992, 998 (9th Cir. 2010). "[F]or a complaint
4   to survive a motion to dismiss, the non-
    conclusory 'factual content,' and reasonable
5   inferences from that content, must be
    plausibly suggestive of a claim entitling the
6   plaintiff to relief." *Moss v. United States
    Secret Serv.*, 572 F.3d 962, 969 (9th Cir.
7   2009). "A claim has facial plausibility when
    the plaintiff pleads factual content that
8   allows the court to draw the reasonable
    inference that the defendant is liable for the
9   misconduct alleged." *Ashcroft v. Iqbal*, 129
    S. Ct. 1937, 1949 (2009). "[O]nce a claim has
10  been stated adequately, it may be supported by
    showing any set of facts consistent with the
11  allegations in the complaint." *Bell Atlantic
    Corp. v. Twombly*, 550 U.S. 544, 563[, 127 S.
12  Ct. 1955, 1969, 167 L. Ed. 2d 929] (2007).
    "[G]enerally the scope of review on a motion
13  to dismiss for failure to state a claim is
    limited to the Complaint." *Daniels-Hall*, 629
14  F.3d at 998.

15  *Id.* at *2.

16      "As a general matter, a district court may not consider any
17  material outside of the pleadings when ruling on a Rule 12(b)(6)
18  motion." *O'Connell-Babcock v. Multnomah County, Oregon*, No. 08-cv-
19  459-AC, slip op., 2009 WL 1139441 at *4 (D. Or. Apr. 24, 2009)
20  (King, J.) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688
21  (9th Cir. 2001)). However, the Ninth Circuit recognizes an excep-
22  tion to this rule that allows consideration of documents "'whose
23  contents are alleged in a [pleading] and whose authenticity no
24  party questions, but which are not physically attached to the . . .
25  pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir.
26  1998) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.
27  1994)), *superseded by statute on other grounds as recognized in*
28  *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir.

1  2006); *Vanguard Prods. Group v. Merchandising Technologies, Inc.*,

2  slip op., 2008 WL 939041, at *3 (D. Or. Apr. 3, 2008) (Brown, J.)

3  (same; quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th

4  Cir. 2001)).

5      Although Failey does not mention her EEO complaints expressly

6  in her Complaint, the "contents" of her EEO complaints are fairly

7  alleged in her Complaint.  The defendants clearly do not question

8  the  authenticity  of  the  documents  contained  in  the  EEOC

9  investigatory file because they have submitted those documents,

10  themselves, for the court's consideration.  The court finds the

11  contents of Failey's EEO complaints are documents of the type

12  contemplated  by  the  Ninth  Circuit  in  crafting  the  exception

13  discussed by the *Parrino* court, and therefore will consider those

14  documents in the context of the defendants' motion to dismiss.

15

16               **B.   Exhaustion of Remedies**

17      The defendants argue some of Failey's claims should be dis-

18  missed because she failed to exhaust her administrative remedies

19  with regard to those claims.[63]  Specifically, the defendants argue

20  Failey  has  failed  to  exhaust  her  administrative  remedies  with

21  regard  to  her  Second  Claim  for  Relief,  Count  I,  where  Failey

22  alleges age discrimination due to the defendants' "attempting to

23  force her into quitting by giving her excessive workloads, because

24  of her age"; and that portion of her Third Claim for Relief where

25  Failey  alleges  disability  discrimination  due  to  the  defendants'

26  "attempting to force her into quitting, telling her 'why don't you

27

28      [63]Dkt. #32, ECF pp. 12-15.

17 - MEMORANDUM OPINION AND ORDER

just retire[,]' and by giving her excessive work loads[.]"  The defendants argue these claims relate to issue (3) of Failey's EEO complaint, which the EEO dismissed for failure to raise the issue before the EEO counselor.[64]

The defendants further argue Failey has raised new claims in the instant case that have never been exhausted.  These include Failey's First Claim for Relief, Counts I and II (discrimination based on skin color and a retaliation claim under Title VII), and her Second Claim for Relief, Count II (discriminatory retaliation based on age).[65]

To establish federal subject matter jurisdiction, Failey "was required to exhaust her EEOC administrative remedies before seeking federal adjudication of her claims." *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (citation omitted).  To determine whether Failey exhausted her administrative remedies, the court looks both to the scope of the EEO charge, and to the investigation of the charge. *Id.*  The court has subject matter jurisdiction over Failey's Title VII claims if those claims "fell within the scope of the EEOC's *actual* investigation or an 'EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *Id.* (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)).

Notably, "[t]he EEOC's failure to address a claim asserted by the plaintiff in her charge has no bearing on whether the plaintiff has exhausted her administrative remedies with regard to that

---

[64]*See* Dkt. #33-1, ECF p. 197.

[65]Dkt. #32, ECF pp. 15-17.

18 - MEMORANDUM OPINION AND ORDER

1 claim." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.

2 2002) (citing *Yamaguchi v. United States Dep't of the Air Force*,

3 109 F.3d 1475, 1480 (9th Cir. 1997)).  The *B.K.B.* court observed

4 that the language of a claimant's EEOC charges is construed "'with

5 utmost liberality since [the charges] are made by those unschooled

6 in the technicalities of formal pleading." *B.K.B.*, 276 F.3d at

7 1100 (citing, *inter alia*, *Love v. Pullman Co.*, 404 U.S. 522, 527,

8 92 S. Ct. 616, 619, 30 L. Ed. 2d 679 (1972) "(stating that 'techni-

9 calities are particularly inappropriate in a statutory scheme [such

10 as Title VII] in which laymen, unassisted by trained lawyers,

11 initiate the process')").  "'[T]he crucial element of a charge of

12 discrimination is the factual statement contained therein.'"  *Id.*

13 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th

14 Cir. 1970); additional citation omitted).  The court may consider

15 allegations not specified in a claimant's administrative charge if

16 those claims are like, or reasonably related to, the claims set

17 forth in the administrative charge.  *Id.* (citations omitted).

18     In Failey's Pre-Complaint, she alleged only disability

19 discrimination.[66]  In the EEO Investigative Affidavit (Complaint),

20 it is noted that Failey had "alleged discrimination based on Race

21 (African American), Age (60 years old), and Physical Disability

22 (Neck, Back, and Shoulder)[.]"[67]  Even a generous reading of

23 Failey's EEO complaints reveals nothing that could be construed as

24 an allegation that her employer retaliated against her or

25 discriminated against her because of prior grievances or lawsuits

26

27     [66]*See* Dkt. #38-1, Pre-Complaint.

28     [67]Dkt. #35-3, ECF p. 2; *see id.*, ECF pp. 3-10, 12-13.

1  Failey had filed.  Similarly, Failey did not mention, in her EEO
2  complaint, anything about the defendants "failing to compensate her
3  while she was in physical therapy, because of the color of her
4  skin," as alleged in her First Claim for Relief, Count I, paragraph
5  44.  Thus, the court finds Failey did not exhaust her administra-
6  tive remedies with regard to her claims of discriminatory retalia-
7  tion in her First Claim for Relief, Count II, and her Second Claim
8  for Relief, Count II, and her claim of race discrimination on the
9  basis of failure to pay her while she was in physical therapy.  The
10 defendants' motion to dismiss is **granted** as to those claims,
11 consisting specifically of paragraphs 44, 48-51, and 55-58 of
12 Failey's Second Amended Complaint.

13      With regard to Failey's claims of discrimination on the basis
14 of "skin color," the defendants argue Failey never raised such
15 claims in her EEO complaints.  The EEOC recognized that Failey had
16 raised a discrimination claim based on "race."[68]  Under the facts
17 of this case, the defendants' attempt to draw a distinction between
18 Failey's claim of discrimination based on "race," in her EEOC
19 complaint, and her claim of discrimination based on "skin color,"
20 in her Complaint, ignores the broad reach of anti-discrimination
21 statutes.  *See El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072-73 (9th
22 Cir. 2005) (same, with regard to the reach of 42 U.S.C. § 1981);
23 *cf. Hernandez v. New York*, 500 U.S. 352, 354, 111 S. Ct. 1859,
24 1863, 114 L. Ed. 2d 395 (1991) (observing, in the context of
25 classes of individuals who may be excluded from jury service, "It
26 may be, for certain ethnic groups and in some communities, that

27

28      [68] *Id.*

20 - MEMORANDUM OPINION AND ORDER

proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis."). A fair reading of Failey's Complaint indicates she intended to assert a claim for discrimination on the basis of race, as she did before the EEOC. The court will make such an assumption for purposes of the defendants' motion, and if Failey's First Claim for Relief, Count I, survives, then Failey will be afforded an opportunity to amend her Complaint to properly allege race discrimination.

Thus, assuming Failey's First Claim for Relief, Count I, properly states a claim for race discrimination, the court finds Failey exhausted her administrative remedies as to her First Claim for Relief, Count I, paragraphs 42, 43, and 45-47; her Second Claim for Relief, Count I, paragraphs 52-54; and her Third Claim for Relief, paragraphs 59-62. In these claims, Failey alleges the defendants discriminated against her by, among other things, "requiring her to work on the flat sorter machine and giving her excessive work loads,"[69] "requiring her to work weekends,"[70] "limiting her work hours arbitrarily,"[71] forcing her into early retirement,[72] and telling her a "transfer request would be unsuccessful because of her disability and misleading her about the elimination of her current position."[73] These are not "new claims,"

---

[69]Dkt. #18, ¶¶ 43 & 60.

[70]*Id.*, ¶¶ 45 & 53.

[71]*Id.*, ¶¶ 46 & 54.

[72]*Id.*, ¶¶ 47, 53, & 60.

[73]*Id.*, ¶ 61.

21 - MEMORANDUM OPINION AND ORDER

as argued by the defendants, as the facts underlying these claims were described by Failey (albeit not always clearly) in her EEO complaint documents.

The defendants' motion to dismiss these claims for failure to exhaust is **denied**.

### C.  Failey's ADA Claim

Failey brings her Third Claim for Relief ("Unlawful Discrimination Based on Disability" under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12112.[74] The defendants argue an ADA claim cannot lie against the federal government.  Failey does not address this issue in her response to the defendants' motion.[75]

The defendants are correct.  As the Honorable Michael R. Hogan of this court recently explained:

> It is well-settled that the federal government is excluded from the ADA's definition of "employer."  42 U.S.C. § 12111(5)(B)(i) [footnote omitted].  Based on this exclusion, federal courts have concluded that the ADA provides no remedy to federal employees." *Daniels v. Chertoff*, 2007 WL 1140401, *2 (D. Ariz. 2007) (citing *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 11, n.1 (the ADA is not available to federal employees); *see also Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003) (the entire federal government is excluded from coverage of the ADA); *accord Rivera v. Heyman*, 157 F.3d 101, 103 (2nd Cir. 1998) (a federal employee has no remedy for employment discrimination under the ADA).

---

[74]Dkt. #18, ¶¶ 59-62; *see also id.*, ¶ 4, jurisdictional allegation for ADA claim.

[75]*See* Dkt. #34.

22 - MEMORANDUM OPINION AND ORDER

*Thomas v. Astrue*, slip op., 2012 WL 5198339, at *4 (D. Or. Oct. 17, 2012) (Hogan, J).

Accordingly, the defendants' motion to dismiss is **granted** as to Failey's Third Claim for Relief.

### D.   State Law Claims

The defendants argue the court lacks jurisdiction over Failey's state-law claims - her Fourth, Fifth, and Sixth Claims for Relief.

### 1.   Fourth Claim for Relief

Failey's Fourth Claim for Relief asserts a claim under ORS 659A.030, which prohibits discrimination on the basis of "race, color, religion, sex, sexual orientation, national origin, marital status or age." Section 717 of Title VII of the Civil Rights Act provides the exclusive remedy by which a federal employee can challenge discriminatory employment practices "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16; *see Charles v. Garrett*, 12 F.3d 870, 873 (9th Cir. 1993) (citing, *inter alia*, *Brown v. General Servs. Admin.*, 425 U.S. 820, 96 S. Ct. 1961, 48 l. Ed. 2d 402 (1976)). The statute is expressly applicable to employees of the USPS. 42 U.S.C. § 2000e-16.

Similarly, the Ninth Circuit, in agreement with every other federal circuit to have considered the issue, has held that the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, "is the exclusive remedy for age discrimination claims by federal employees." *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555

23 - MEMORANDUM OPINION AND ORDER

1  F.3d 1051, 1057 & n.5 (2009); *see Ahlmeyer, passim* (discussing the

2  issue in detail).

3      Thus, Failey's Fourth Claim for Relief is precluded by federal

4  law, and the defendants' motion to dismiss her Fourth Claim for

5  Relief is **granted.**

6

7  *2.  Fifth Claim for Relief*

8      Failey brings her Fifth Claim for Relief under ORS § 659A.040,

9  which provides:

10         It is an unlawful employment practice for an
           employer to discriminate against a worker with
11         respect to hire or tenure or any term or con-
           dition of employment because the worker has
12         applied for benefits or invoked or utilized
           the procedures provided for in ORS chapter 656
13         or has given testimony under the provisions of
           those laws.

14

15  ORS § 659A.040(1).  To make out a *prima facie* case under the

16  statute, Failey must show that "(1) [s]he invoked the workers'

17  compensation system; (2) [s]he was discriminated against in the

18  tenure, terms or conditions of [her] employment; and (3) the

19  discrimination was caused by [her] invocation of workers' compen-

20  sation." *Krouse v. Ply Gem Pacific Windows Corp.*, 803 F. Supp. 2d

21  1220, 1226 (D. Or. 2011) (Haggerty, J) (citing *Williams v.*

22  *Freightliner, LLC*, 196 Or. App. 83, 90, 100 P.3d 1117, 1121

23  (2004)).

24      Failey has made no allegations whatsoever relating to any

25  workers' compensation claim.  Moreover, the Federal Employees

26  Compensation Act ("FECA"), 5 U.S.C. § 8101, *et seq.,* "is a federal

27  workers' compensation scheme intended to provide an exclusive

28  remedy for work-related injuries to federal employees." *Ponce v.*

24 - MEMORANDUM OPINION AND ORDER

1  *U.S. Government*, slip op., 2012 WL 292210, at *2 (D. Or. Jan. 31,

2  2012) (Acosta, MJ) (citing 5 U.S.C. §§ 8102(a), 8116(c)); *see*

3  *O'Connell v. Potter*, 274 Fed. Appx. 518, 519 (9th Cir. 2008) (mem.)

4  ("To the extent that [plaintiff's] injuries were job-related,

5  FECA's remedy is exclusive.").

6       Accordingly, the defendants' motion to dismiss Failey's Fifth

7  Claim for Relief is **granted.**

8

9  ***3.   Sixth Claim for Relief***

10      In her Sixth Claim for Relief, Failey alleges the defendants

11 violated ORS § 659A.112, which prohibits an employer from refusing

12 "to hire, employ or promote, to bar or discharge from employment or

13 to discriminate in compensation or in terms, condition or privi-

14 leges of employment on the basis of disability."   ORS

15 § 659A.112(1).  Failey contends she was discriminated against on

16 the basis of her "disability."

17      The federal Rehabilitation Act of 1973, 29 U.S.C. § 791 *et*

18 *seq.*, is the exclusive remedy for federal employees alleging disa-

19 bility discrimination. *Thomas v. Astrue*, slip op., 2012 WL 5198339

20 at *3 (D. Or. Oct. 17, 2012) (Hogan, J.); *see Oakes v. Sec'y, U.S.*

21 *Dept. of Veteran's Affairs*, slip op., 2012 WL 4508000 at *8 (D. Or.

22 Sept. 28, 2012) (Hernandez, J.) (citations omitted)).   Therefore,

23 the defendants' motion to dismiss Failey's Sixth Claim for Relief

24 also is **granted.**

25      As to all of her state-law claims for relief, Failey argues

26 the federal statutes cited above "only preclude state law if the

27 federal statute is designed to remedy the same harm."   Dkt. #7,

28 p. 7 (citing *Brown v. General Services Admin.*, 425 U.S. 820, 829-

25 - MEMORANDUM OPINION AND ORDER

1  35, 96 S. Ct. 1961, 1967-69, 48 L. Ed. 2d 402 (1976); *Sommatino v.*
2  *United States*, 255 F.3d 704, 711 (9th Cir. 2001)).    Failey
3  misapprehends the holdings in these cases.    The *Sommatino* court
4  explained that the federal anti-discrimination statutes do not
5  preclude a companion claim for "highly personal violations beyond
6  workplace discrimination," such as sexual assault or physical
7  violence.    *Sommatino*, 255 F.3d at 712.    Failey has made no such
8  allegations here, nor has she asserted any state-law tort claims.
9  The Oregon statutes upon which Failey bases her Fourth, Fifth, and
10 Sixth Claims are specifically precluded by federal law, as
11 discussed above.

12
13                        ***E.  Proper Parties Defendant***

14      The defendants argue Sharon Blackburn and the United States
15 Postal Service should be dismissed from the case, asserting the
16 only proper party defendant in an employment discrimination action
17 against the USPS is the Postmaster General.[76]    Failey agrees the
18 Postmaster General is the only proper defendant as to her Title VII
19 claims, but she argues, without citation to any authority, that
20 "other federal discrimination protection laws and the Oregon state
21 discrimination protection laws" allow the naming of other
22 defendants.[77]

23      The court has dismissed all of Failey's claims except her
24 Title VII claim for race discrimination, and her claim under the
25 Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 629,

26  _____

27      [76]Dkt. #32, ECF p. 18.

28      [77]Dkt. #34, p. 8.

26 - MEMORANDUM OPINION AND ORDER

1  633a.  As noted above, Failey does not deny that the Postmaster
2  General is the only proper defendant for purposes of her Title VII
3  claim.

4      With regard to Failey's ADEA claim, the Ninth Circuit Court of
5  Appeals has long held "that 42 U.S.C. § 2000e-16(c), identifying
6  the proper defendant in Title VII discrimination actions, also
7  applies to age discrimination claims brought under the ADEA."
8  *Romain v. Shear*, 799 F.2d 1416, 1418 (9th Cir. 1986).  Therefore,
9  the defendants' motion to dismiss Sharon Blackburn and the United
10  States Postal Service as defendants in this case is **granted**.

11

12      ### III.  THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

13      For the reasons discussed above, all of Failey's claims have
14  been dismissed except (1) her First Claim for Relief, Count I,
15  paragraphs 42, 43, 45, 46, and 47, to the extent she alleges
16  discrimination based on race; and (2) her Second Claim for Relief,
17  Count I, paragraphs 52, 53, and 54, alleging discrimination based
18  on her age.

19      The defendants have only argued for summary judgment as to the
20  age discrimination claim.  The court therefore addresses the
21  defendants' motion for *partial* summary judgment against Failey's
22  age discrimination claim contained in her Second Claim for Relief,
23  Count I, paragraphs 52, 53, and 54.

24

25

26

27

28

27 - MEMORANDUM OPINION AND ORDER

## A.  Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In considering a motion for summary judgment, the court "must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial."  *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002) (citing *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996)).

The Ninth Circuit Court of Appeals has described "the shifting burden of proof governing motions for summary judgment" as follows:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325, 106 S. Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  *Id.* at 324, 106 S. Ct. 2548.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 528 (1986).  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably

> render a verdict in the non-moving party's
> favor, all justifiable inferences are to be
> drawn in its favor.  *Id.* at 255, 106 S. Ct.
> 2505.

*In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010).

Notably, "[a]s a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Calif. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000).  The *Chuang* court explained that this minimal evidence standard is due to the nature of employment cases, where "'the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by a factfinder, upon a full record.'"  *Id.* (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

### B.  Failey's Age Discrimination Claim

The Ninth Circuit has explained the standard of review for an ADEA claim as follows:

> We evaluate ADEA claims that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *Enlow v. Salern-Keizer Yellow Cab Co.*, 489 F.23d 802, 812 (9th Cir. 2004).  Under this framework, the employee must first establish a prima facie case of age discrimination.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).  If the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action.  *Id.*  If the employer satisfies that burden, the employee must then prove that the reason

advanced by the employer constitutes mere pre-text for unlawful discrimination. *Id.* "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000).

*Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008); *accord Brockbank v. U.S. Bancorp.*, slip op., 2013 WL 311326, at *1 (9th Cir. Jan. 28, 2013) (mem.).

With regard to Failey's claim that she was "forced to retire" in violation of the ADEA, she "must show that she was: '(1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by [a] substantially younger employee[] with equal or inferior qualifications or discharged under circumstances otherwise "giving rise to an inference of age discrimination."'" *Brockbank, supra* (quoting *Diaz*, 521 F.3d at 1207; citation omitted). With regard to her disparate treatment allegations, she must show that her age "'actually played a role in [the employer's decisionmaking] process and [her age] had a determinative influence on the outcome.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706, 123 L. Ed. 2d 338 (1993)).

Failey does not allege, and the evidence does not indicate, that she was replaced by a substantially younger employee. Failey alleges she was treated differently because of her age when (1) she was forced into quitting because she was given "excessive work

30 - MEMORANDUM OPINION AND ORDER

loads," and (2) her hours were limited arbitrarily.[78]  The evidence fails even to suggest that these actions, if they occurred, were due to Failey's age.  Three other "junior Mail Processing Clerks with restrictions were also excessed from Tour 2."[79]  All three of them were over the age of 40 (ages 57, 42, and 53).  Failey has offered nothing other than her own speculation that age played a part in her employer's actions.

Even accepting all of Failey's allegations as true for purposes of the defendants' summary judgment motion, Failey still cannot prevail because the USPS had legitimate, nondiscriminatory reasons for its actions.  Failey was not singled out for transfer from Tour 2 to Tour 3; an entire crew was excessed to Tour 3, with transfers based on seniority in accordance with the collective bargaining agreement between the USPS and the American Postal Workers Union.  Failey was the least senior of the employees being excessed, and the other three clerks with similar jobs all were over age 40.  The record contains no evidence to substantiate Failey's claim that she was given "excessive work loads."  Failey has offered no evidence to suggest the stated reasons for the USPS's actions were pretextual, nor has she established that she was "forced" into early retirement.

The court finds, therefore, that Failey has failed to show the existence of any genuine issue for trial on her age discrimination claim.  Accordingly, the defendants' motion for partial summary judgment on this claim is **granted.**

---

[78]Dkt. #18, ¶¶ 53 & 54.

[79]Dkt. #33-1, ECF p. 151.

31 - MEMORANDUM OPINION AND ORDER

*IV.   CONCLUSION*

The only issue remaining in the case is Failey's First Claim for Relief, Count I, alleging race discrimination.  As discussed above, Failey has inartfully pled this claim as one asserting discrimination on the basis of "skin color."  Failey is directed to file a Third Amended Complaint **by April 12, 2013,** to properly restate her claim for race discrimination against the Postmaster General only, and omitting all other claims.

IT IS SO ORDERED.

Dated this 26th day of March, 2013.


/s/ Dennis J. Hubel
_____
Dennis James Hubel
Unites States Magistrate Judge

32 - MEMORANDUM OPINION AND ORDER